# In the United States Court of Federal Claims

UTE INDIAN TRIBE OF THE UINTAH
AND OURAY INDIAN RESERVATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

No. 18-357

Filed August 26, 2025

Jeffrey S. Rasmussen, Patterson Earnhart Real Bird & Wilson LLP, Louisville, CO, for plaintiff.

Ashley M. Carter, Civil Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Granting the government's motion to stay the proceedings**

The Ute Indian Tribe of the Uintah and Ouray Indian Reservation seeks compensation from the United States for an alleged Fifth Amendment taking of land within the Uncompahgre Reservation in Utah. The Tribe filed a parallel suit in D.C. district court under the Administrative Procedure Act involving similar allegations but requested different relief; here the Tribe seeks damages for a taking, while in the D.C. action the Tribe seeks review of the U.S. government's denial of its request to restore the land to trust status for the benefit of the Tribe. The land at issue in both cases is the same "surplus" or unallotted land within the reservation, land that is within the boundaries of the reservation but was never allotted to a particular member of the Tribe. While the government's motion for summary judgment was pending in this court, the D.C. district court ruled in favor of the government on summary judgment, determining that "the Tribe has no compensable title to" and "is not entitled to proceeds from sales of unallotted land in the Uncompahgre Reser-

1

vation." *Ute Indian Tribe of Uintah and Ouray Reservation v. United States Department of Interior*, 775 F. Supp. 3d 75, 76, 86 (D.D.C. 2025). That case involved the same parties, relied on the same historical events, and interpreted the same statutes at issue in this case. The Tribe appealed the district court's decision to the D.C. Circuit, and the Tribe has filed its opening brief on appeal.

The parties now disagree over whether to stay this case while the D.C. Circuit appeal is pending. The government seeks a stay, arguing that a stay will avoid inconsistent reasoning and outcomes and will be more efficient; according to the government, the two cases both turn on whether the Tribe had or has compensable title to the unallotted lands. The Tribe opposes, arguing that the court cannot stay this case because the two cases have different evidentiary records and standards, even if the issue in both cases is the same. According to the Tribe, the D.C. action cannot result in issue or claim preclusion here, and any inconsistent outcome is justified by the different records and standards in the cases.

This court balances the delay in resolving this case against the possibility of irreconcilable outcomes. This case and the D.C. action have different factual records, but each case turns on a legal interpretation, and the parties, historical events, and statutes at issue are the same. Regardless of any preclusion, the overlap in issues warrants a stay. The court will grant the government's motion and stay the case until the D.C. Circuit panel issues its decision.

**I.    Background**

    **A.    The procedural history of this case**

In March 2018, the Tribe filed a complaint in this court seeking damages for, among other things, a Fifth Amendment taking. The Tribe alleged that the United States government leased unallotted land within the Uncompahgre Reservation for grazing, oil, and gas purposes and did not set aside the profits from those leases for the benefit of the Tribe. *See generally* ECF No. 1. The

government moved to dismiss, and Judge Hodges—the judge initially assigned to this case—dismissed the majority of the Tribe's claims. *Ute Indian Tribe of Uintah and Ouray Indian Reservation v. United States*, 145 Fed. Cl. 609 (2019) (available at ECF No. 27). Only the takings claim remained. Because the takings claim "rests on the contested premise that the Tribe holds recognized title to the [Uncompahgre] Reservation," Judge Hodges concluded that an "opportunity to rule on the soundness of this premise would facilitate resolution of this case." *Id.* at 632 (quotation marks omitted).

After discovery, the government moved for summary judgment (ECF No. 75), and that motion is pending. The government argues that the Tribe did not and does not hold a compensable property interest in the unallotted land within the reservation because either (a) the Tribe never had a compensable property interest in the unallotted land, given that the reservation was created by executive order—a mechanism of establishing a reservation that conveys an exclusive right of use and occupancy, but not a compensable property interest—and a later 1880 act did not provide the Tribe with a compensable property interest, or (b) if the Tribe ever did have a compensable property interest, Congress extinguished that interest in 1894 or 1897 through further legislation. *Id.* at 5-7, 14-38 (citing Act of June 15, 1880, Pub. L. No. 46-223, 21 Stat. 199, 199-205 ("the 1880 Act"); Indian Department Appropriations Act of Aug. 15, 1894, Pub. L. No. 53-290, 28 Stat. 286, 337 (§§ 20-21) ("the 1894 Act"); and Indian Department Appropriations Act of June 7, 1897, Pub. L. No. 55-3, 30 Stat. 62, 87 ("the 1897 Act")). The government adds that the Tribe's claim is barred by later settlement agreements and this court's statute of limitations. *Id.* at 22-33.

The Tribe argues that it holds a compensable property interest in the unallotted lands within the Uncompahgre Reservation and that Congress has never extinguished it. ECF No. 81. The Tribe argues that, although the reservation was created by executive order, Congress in the 1880 Act

3

gave the president the authority to create the reservation, making the reservation congressionally, not executively, established. *Id.* at 12-18.

The case was transferred to me in 2023. I heard oral arguments from both parties on the government's motion for summary judgment in November 2024.

### B.    The history of the related D.C. district court case

The day after this case was filed, the Tribe sued the federal government in the D.C. district court. *Ute Indian Tribe of the Uintah and Ouray Reservation v. United States*, No. 18-546, ECF No. 1 (D.D.C., filed Mar. 8, 2018) (complaint). The Tribe challenged, under the Administrative Procedure Act (APA), a 2018 decision of the Secretary of the Interior denying the Tribe's request to restore unallotted lands within the reservation to trust status under the Indian Reorganization Act, 25 U.S.C. § 5103(a). *Id.* (challenging Solicitor's Opinion M-37051 (Feb. 21, 2018) and the letter endorsing that opinion (Mar. 2, 2018)). The Tribe argued that the Secretary's decision was arbitrary and capricious.

The parties cross-moved for summary judgment. In February 2025, the district court granted the government's motion, holding that "the Tribe has no compensable title to" and thus "is not entitled to proceeds from sales of unallotted land in the Uncompahgre Reservation." *Ute Indian Tribe of the Uintah and Ouray Reservation v. United States*, 775 F. Supp. 3d 75, 76, 86 (D.D.C. 2025) (available at ECF No. 92-1).

The district court agreed with the Secretary that no congressional act entitled the Tribe to proceeds from the sale of unallotted land within the reservation. *Ute Indian Tribe*, 775 F. Supp. 3d at 79-86. The court concluded that the 1880 Act did not recognize an existing or establish a new compensable title for the Tribe in the Uncompahgre Reservation. *Id.* at 79-83. Instead, the 1880 Act only gave the Tribe proceeds from the sale of the land that the Tribe had earlier given up in Colorado. *Id.* The decision relied on the text of the 1880 Act, later Supreme Court decisions, and

4

the historical timeline. The court also determined that neither the 1894 Act (which was never effectuated) nor the 1897 Act could have given the Tribe compensable title to the unallotted land within the Uncompahgre Reservation in Utah in part because both acts "are silent" about proceeds from the land. *Id.* at 83-86. But even if the 1880 Act had recognized or granted the Tribe compensable title, the court explained, "the 1897 Act would have eliminated [that property right] by opening (without qualification) the unallotted land to entry under the general land laws, including the homestead laws." *Id.* at 85-86.

In April 2025, the Tribe appealed the district court's decision. *Ute Indian Tribe*, No. 18-546, ECF No. 118 (D.D.C., filed Apr. 8, 2025). So far, the Tribe has filed its opening brief in that appeal. Brief of the Tribe, *Ute Indian Tribe*, No. 25-5111, ECF No. 2130720 (D.C. Cir., filed Aug. 19, 2025).

### C. The government's motion to stay this case

Just before the Tribe appealed the D.C. action, this court held a status conference and sought the parties' views on whether this court should move forward on the government's motion for summary judgment, stay the case pending any appeal in the D.C. Circuit, or proceed in some other way. The government now moves to stay this proceeding. ECF No. 95.

## II. Discussion: on balance, staying this case is the better course

The government argues that this case and the D.C. action involve the same parties and the same legal question: whether the Tribe had or has compensable title to unallotted lands within the Uncompahgre Reservation. ECF No. 95 at 1. The government adds that a stay will avoid inconsistent reasoning and outcomes and promote judicial efficiency. *Id.* at 5-7. The government also argues that staying the case will not prejudice the Tribe because, during the stay, the Tribe can litigate and resolve issues at the D.C. Circuit that overlap with issues in this court. *Id.*

5

The Tribe responds that this court may stay the case only if the evidentiary records and standards of the two cases are the same. ECF No. 96 (discussing each case's "evidentiary landscape"). The D.C. action arises under the APA, so, according to the Tribe, the evidence there is limited to the administrative record; here, the parties engaged in discovery, generating a bigger record. *Id.* at 5-6. Thus, according to the Tribe, neither issue nor claim preclusion can apply, and any inconsistent outcomes would result only from the different evidentiary records and standards, making them not inconsistent at all. *Id.* at 3-4. The Tribe adds that it has a right to a final judgment, so this court is required to proceed and reach a decision independent of the D.C. action. *Id.* at 1.

The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the [cases] on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). This court has broad discretion to decide whether, when, and how to stay a case. *Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997). Generally, the courts disfavor a "multiplicity of suits without substantial reason." *Kansas City Southern Railway Co. v. United States*, 282 U.S. 760, 763-64 (1931).

The court "must weigh competing interests and maintain an even balance" between the parties' interests and the court's obligation to promptly adjudicate cases. *Landis*, 299 U.S. at 254-55, 259; *Cherokee Nation of Oklahoma*, 124 F.3d at 1416. The court must ensure that the nonmoving party is protected from substantial loss or prejudice. *Landis*, 299 U.S. at 255, 258. And, unless there is "a pressing need," a stay may not be "immoderate or indefinite." *Cherokee Nation of Oklahoma*, 124 F.3d at 1416 (quotation marks omitted).

When there is a close bond between two related pending cases, comity, justice, and judicial administration often counsel in favor of staying the less advanced case. If the two cases consider

the same arguments on the same issues, "the possibility of inconsistent judicial resolution" and maintaining "dual proceedings could result in unfair burden to the defendant, an unnecessary crowding of this court's docket, and general administrative chaos." *City of Santa Clara v. United States*, 215 Ct. Cl. 890, 893 (1977). The cases need not involve identical issues to warrant a stay. *Landis*, 299 at 254.

The better course in this case is to grant a stay and wait for the D.C. Circuit's decision. Waiting avoids potentially incompatible decisions and conserves resources. Those benefits outweigh the drawbacks of delaying resolution of this case. A stay until the D.C. Circuit panel reaches a decision is reasonable in scope and definite in time, and the Tribe will not be unduly prejudiced by a stay.

This case and the D.C. action are closely related. They involve the same parties. Both require deciding the same legal question—whether the Tribe holds compensable title to the unallotted land within the reservation—based on the meaning of the same statutes—the 1880, 1894, and 1897 Acts. *See* ECF No. 81 at 1 (Tribe arguing that it "has compensable title to the Uncompahgre Reservation," relying on the 1880, 1894, and 1897 Acts); *Ute Indian Tribe*, No. 25-5111, ECF No. 2130720 at 31 (opening brief of the Tribe on appeal arguing that it has "compensable title under the 1880 Act"). Although the D.C. action arises under the APA, and this case alleges a Fifth Amendment taking, this court and its predecessor have granted stays under similar circumstances. *See, e.g.*, *Nevada Power Co. v. United States*, 229 Ct. Cl. 783, 784-85 (1982) (staying a case seeking a refund in this court pending an appeal of a related district court decision, which covered related declaratory and injunctive relief); *see also Farmer v. United States*, 132 Fed. Cl. 343, 345 (2017) (staying a case where a court of appeals was set to decide whether the government violated a specific statute and this court was addressing the same statute, "given the symmetry of issues

involved"). And contrary to the Tribe's argument, this court can stay a case even though the evidentiary record in the related case is not the same. *See SanDisk Corp. v. Phison Electronics Corp.*, 538 F. Supp. 2d 1060, 1067 (W.D. Wis. 2008) (granting a stay and explaining that even though the earlier case would not have a preclusive effect and had a different record, the record would be useful in the later case); *Actelion Pharmaceuticals Ltd. v. Lee*, No. 15-cv-1266, 2016 WL 205377, *4-5 (E.D. Va. Jan. 13, 2016) (explaining that a stay was warranted even though the cases had different factual circumstances and one would be purely on the existing record).

In opposing the stay, the Tribe relies on *Jones v. United States*, No. 2020-2182, 2022 WL 473032 (Fed. Cir. Feb. 16, 2022). ECF No. 96. In *Jones*, the Federal Circuit held, where evidentiary records in two related cases were different, that the second case had to be independently evaluated. But *Jones* did not involve a motion to stay; instead, the court of appeals was addressing issue preclusion, which impacts the ultimate decision in the case.

And *Jones* turned on a question of fact: the impact of spoliation sanctions on the admissibility of evidence. Both this case and the D.C. action turn on the legal question of statutory interpretation. Although this case involved discovery and the D.C. action did not, factual differences, the Tribe acknowledges (ECF No. 96 at 6), should not generally make a difference in statutory interpretation. That is especially true after the Supreme Court's determination in *Loper Bright Enterprises v. Raimondo* that, under the APA, "courts, not agencies, will decide all relevant questions of law arising on review of agency action … even those involving ambiguous laws." 603 U.S. 369, 391-92 (2024) (marks and emphasis omitted). The D.C. district court, like this court, did not need to, nor did it, defer to any government interpretation in deciding the meanings of the relevant statutes. Thus, the two courts are applying the same standard to interpret the same statutes, further supporting granting a stay.

Staying this case promotes judicial efficiency and avoids potentially inconsistent decisions. This case requires the court—like the D.C. district court—to interpret the 1880, 1894, and 1897 Acts. If this court were to disagree with the outcome of the D.C. action or even employ different reasoning about the effect of those acts, there is potential for confusion among the parties and in the law. *See Northrop Corp. v. United States*, 27 Fed. Cl. 795, 802 (1993) ("[T]he stay of a court proceeding pending a district court decision generally depends on the threat of inconsistent decisions." (citing *Armstrong v. United States*, 4 Cl. Ct. 269, 271 & n.1 (1984))); *Nevada Power*, 229 Ct. Cl. at 784-85. While this court may not necessarily come to the same conclusion as the D.C. Circuit, this court's decision is better made with the benefit of the D.C. Circuit's views.

The court should be especially careful to avoid inconsistent decisions where the more advanced case might have a preclusive effect on the less advanced case. The Tribe argues that there can be no preclusion because the cases are based on different evidentiary records. *See* ECF No. 96. It is premature to decide whether issue or claim preclusion will apply; staying the case avoids the need to brief and decide the preclusive effect of an ongoing D.C. action. But the *possibility* of issue or claim preclusion is relevant. *See Truckee-Carson Irrigation District v. United States*, 223 Ct. Cl. 684, 685-86 (1980) (staying a case where the outcome in the more advanced case would likely "have a profound effect on the instant case and may, indeed, make it unnecessary to try or dispose of the present suit as an independent matter").

There is at least a possibility that the D.C. action will be preclusive here: The parties are the same, and the D.C. district court decided a legal question that this court will have to decide to address the pending motion for summary judgment. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979) (explaining that the preclusion doctrines have the "dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of

9

promoting judicial economy by preventing needless litigation"). Contrary to the Tribe's argument (ECF No. 96 at 1-6), *Jones* does not hold otherwise. There, preclusion was not appropriate for a few reasons inapplicable to this case. There, the district court defendants (state and local officials) were different from and not in privity with the Court of Federal Claims defendant (the federal government). *Jones*, 2022 WL 473032, at *3 (citing *Jones v. United States*, 846 F.3d 1343, 1363 (Fed. Cir. 2017)). And there, the scope of the record in each case was tied to the particular defendant's liability for spoliation. *Id.* at *3, 12.

The government seeks to stay this case "until resolution of the DC action." ECF No. 95 at 1, 5. Although that request does not have a precise end date, a stay that lasts until the D.C. Circuit issues a panel decision is neither immoderate nor indefinite. *See Farmer*, 132 Fed. Cl. at 345. This case has been pending since 2018, and, as the Tribe points out, a plaintiff generally has a right to a final judgment. But a stay does not deprive a party of a final judgment. *See Landis*, 299 U.S. at 255. And, as the Federal Circuit explained, the risk of prejudice to the party opposing the stay is reduced when the two cases involve the same parties; the plaintiff has some control over the existence and pace of the more advanced proceeding. *In re Sacramento Municipal Utility District*, 395 F. App'x 684, 688 (Fed. Cir. 2010). Here, the parties are the same; the Tribe has already filed its appeal brief; and the D.C. Circuit appeal is moving.

The Tribe also argues that the district court's decision was wrong, asking for this court's independent views. ECF No. 96 at 5 n.3, 6-8. Challenges to the district court's decision are for a court of appeals, not this court, to resolve. *See Vereda, Ltda. v. United States*, 271 F.3d 1367, 1375 (Fed. Cir. 2001) ("[T]he Court of Federal Claims cannot entertain a taking claim that requires the

court to scrutinize the actions of another tribunal." (quotation marks omitted)). The Tribe can challenge and is challenging the merits of the district court's decision on appeal in the D.C. Circuit. *See* Brief of the Tribe, *Ute Indian Tribe*, No. 25-5111, ECF No. 2130720.

### III.   Conclusion

The court **grants** the government's motion to stay this proceeding pending a panel decision in the D.C. Circuit appeal. The parties **shall file** a joint status report every 90 days, between now and when the D.C. Circuit issues its decision, updating the court on the status of the D.C. Circuit appeal. The first report shall be filed by November 24, 2025. Within 30 days after the D.C. Circuit panel issues a decision, the parties **shall file** a joint status report proposing a schedule for further proceedings in this case, including (1) a schedule for any additional briefing on any preclusive effects of the D.C. Circuit's decision and whether the court should rule on or deny as moot the summary judgment motion that is currently pending (ECF No. 75); (2) that the parties have engaged in a settlement discussion within the past week in person, by phone, or by video conference; and (3) that the parties have discussed the possibility of alternative dispute resolution.

IT IS SO ORDERED.

/s/ Molly R. Silfen
MOLLY R. SILFEN
Judge